EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rubén Román Ortiz<br><br>Peticionario<br><br>v.<br><br>Oficina de Gerencia de Permisos;<br>División de Reconsideración de<br>Determinaciones Finales de la OGPe<br><br>Recurrido<br><br>v.<br><br>Myrna Rivera Laboy p/c<br>Ing. Ángel D. Rodríguez<br><br>Recurridos | Certiorari<br><br>2020 TSPR 18<br><br>203 DPR ____ |

Número del Caso: CC-2017-698

Fecha: 7 de febrero de 2020

Tribunal de Apelaciones:

      Región Judicial de Bayamón-Carolina, Panel VIII

Abogados de la parte Peticionaria:

    Lcdo. Daniel Martínez Oquendo
    Lcda. María E. Martínez Avilés


Abogados de la parte Recurrida:

    Lcda. Milagros E. Rijos Ramos
    Lcdo. Elvin D. Hernández Salgado


Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Joseph Feldstein del Valle
    Subprocurador General

    Lcdo. Guillermo Mangual Amador
    Procurador General Auxiliar

Materia: Derecho Administrativo – Doctrina de los esfuerzos adicionales razonables. Notificación a la parte afectada por una determinación gubernamental adversa.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rubén Román Ortiz<br><br>Peticionario<br><br>v.<br><br>Oficina de Gerencia de Permisos; División de Reconsideración de Determinaciones Finales de la OGPe<br><br>Recurrido<br><br>v.<br><br>Myrna Rivera Laboy p/c Ing. Ángel D. Rodríguez<br><br>Recurridos | CC-2017-0698 | *Certiorari* |

El Juez Asociado señor ESTRELLA MARTÍNEZ emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 7 de febrero de 2020.

Nos corresponde determinar si una notificación de una determinación administrativa devuelta por el correo por no encontrarse un buzón donde depositarla (no mail receptacle) constituye una notificación adecuada. Específicamente, en casos en que la agencia remitente, aun enterada de la situación y con alternativas remediales a su alcance, no realiza ningún esfuerzo adicional para re-notificar la misma.

Con lo anterior presente, examinemos los eventos fácticos y procesales que originaron la controversia ante nuestra consideración.

## I

En septiembre de 2015, el Sr. Rubén Román Ortiz (señor Román Ortiz o peticionario), representado por el agrimensor William Torres (agrimensor Torres), presentó una querella contra la Sra. Myrna Rivera Laboy (señora Rivera Laboy) ante la Oficina de Gerencia de Permisos (OGPe).[1] En ésta, alegó que la señora Rivera Laboy llevaba a cabo una ampliación de su propiedad residencial en la Urbanización Las Colinas en el municipio de Toa Baja. Según el señor Román Ortiz, la obra en cuestión, la cual colindaba con dos de sus propiedades, contravenía el Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terreno de la Junta de Planificación, infra.

Por otro lado, la señora Rivera Laboy instó, por conducto del ingeniero Ángel D. Rodríguez (ingeniero Rodríguez), un pleito independiente sobre consulta de construcción ante la OGPe.[2] Ello, con el propósito de legalizar la ampliación que realizó en su propiedad. En desacuerdo, el señor Román Ortiz solicitó intervenir **por derecho propio** en el pleito de consulta. El 6 de julio de 2016, la OGPe autorizó la intervención mediante una resolución que envió al señor Román Ortiz a la dirección siguiente: "Calle Colina Real, Núm. E-1, Las Colinas, Toa

---

[1]Querella Núm.: 2015-SRQ-115884.

[2]Caso Núm.: 2016-112006-CCO-191301.

Baja, Puerto Rico, 00949". El señor Román Ortiz recibió esa notificación.

Así las cosas, el 13 de julio de 2016, la OGPe notificó una Resolución aprobando la solicitud de consulta de la señora Rivera Laboy. Nuevamente, la agencia envió el dictamen por correo regular a la dirección del señor Román Ortiz reseñada anteriormente. No obstante, cuatro días luego, el servicio postal devolvió la correspondencia a la OGPe con la anotación siguiente: "Return to Sender. No Mail Receptacle. Unable to Forward". Surge del expediente que la OGPe conservó el sobre devuelto, pero no realizó ninguna otra gestión para re-notificar al señor Román Ortiz.

Amparada en la Resolución del 13 de julio de 2016 -cuya existencia el señor Román Ortiz aún desconocía- la señora Rivera Laboy solicitó a la OGPe el correspondiente permiso de construcción. Éste se expidió el 25 de agosto de 2016 y tampoco le fue notificado al señor Román Ortiz.

Así las cosas, el 28 de noviembre de 2016, el señor Román Ortiz presentó una solicitud de reconsideración ante la División de Reconsideración de Determinaciones Finales de la OGPe (División de Reconsideración) y planteó que nunca se le notificó la Resolución autorizando la consulta de construcción, a pesar de ser parte en dicho procedimiento. De ese modo, solicitó se dejara sin efecto el dictamen y se devolviera el caso para que se re-notificara conforme a derecho.

Luego de celebrar una vista a los efectos, la División de Reconsideración se declaró sin jurisdicción para atender la solicitud del señor Román Ortiz. Concluyó que la Resolución en cuestión le fue notificada al señor Román Ortiz conforme a derecho el 13 de julio de 2016, de modo que solicitó reconsideración tardíamente. La División de Reconsideración basó su conclusión en el hecho de que la OGPe notificó el dictamen en cuestión a la dirección en récord provista por el propio señor Román Ortiz y de conformidad con los mecanismos autorizados por ley.

Además, la División de Reconsideración razonó que, en la alternativa, el señor Román Ortiz fue debidamente notificado del dictamen a través del agrimensor Torres. Según la División de Reconsideración, éste último era el agente autorizado del señor Román Ortiz en el pleito de consulta de construcción y también recibió la notificación. Finalmente, la División de Reconsideración arguyó que el señor Román Ortiz también conoció -o pudo conocer- el desenlace del pleito sobre consulta de construcción, pues la señora Rivera Laboy instaló un rótulo frente a su propiedad que indicaba el número de permiso de construcción.

Inconforme, el peticionario presentó un recurso de revisión judicial de la determinación administrativa ante el Tribunal de Apelaciones. Señaló que la OGPe no le notificó el dictamen conforme a derecho, pues a pesar de conocer las razones por las que el correo devolvió la

notificación, nada intentó hacer la agencia para re-notificarle. En la alternativa, planteó que la agencia no procuró los medios de envío autorizados por ley, pues cursó la notificación por correo regular y no por correo certificado. No obstante, el foro apelativo intermedio suscribió el razonamiento de la División de Reconsideración y confirmó la determinación recurrida.

En desacuerdo, el señor Román Ortiz presentó una petición de certiorari ante este Foro mediante la cual reafirmó sus planteamientos sobre notificación defectuosa. Resumidos los hechos pertinentes, expongamos el marco legal que gobierna la controversia.

## II

Bajo nuestro ordenamiento constitucional, sabido es que ninguna persona puede ser privada de su propiedad sin el debido proceso de ley. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley, hemos explicado, encarna dos dimensiones, a saber: una sustantiva y otra procesal. Fuentes Bonilla v. ELA et al., 200 DPR 364, 394 (2018). En la vertiente aquí pertinente, la procesal, el debido proceso de ley exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo. Íd.; Picorelli López v. Depto. de Hacienda, 179 DPR 720, 735-736 (2010).

Como corolario de este mandato constitucional, hemos reiterado que los procedimientos adjudicativos deben observar las siguientes garantías mínimas: (1) **notificación adecuada del proceso**; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el récord. Fuentes Bonilla v. ELA et al., supra, pág. 39 esc. 75; Rivera Rodríguez & Co. v. Lee Stowell, etc., 130 DPR 881, 889 (1993).

En el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. Álamo Romero v. Adm. de Corrección, 175 DPR 314, 329 (2009). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. Báez Díaz v. E.L.A., 179 DPR 605, 623 (2010). Sin embargo, hemos reiterado que el procedimiento adjudicativo administrativo **debe de ser justo en todas sus etapas** y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate. Álamo Romero v. Adm. de Corrección, supra, pág. 330; López Vives v. Policía de P.R., 118 DPR 219, 231 (1987).

A tono con lo anterior, este Tribunal ha enfatizado en múltiples contextos que el debido proceso de ley también exige a las agencias administrativas notificar **adecuadamente** los dictámenes emitidos en los procedimientos adjudicativos. Véanse, Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998, 1014 (2008); Asoc. Vec. de Altamesa Este v. Mun. San Juan, 140 DPR 24, 34 (1996); Asoc. Residentes v. Montebello Dev. Corp., 138 DPR 412, 421 (1995).

**A.**

Para acatar las exigencias mínimas del debido proceso de ley, la Ley Núm. 28-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA secs. 9601-9713, establece quiénes tienen derecho a ser notificados de una orden o resolución final emitida por una agencia administrativa. Para conocer quién alberga ese derecho, es necesario remitirnos al concepto de "parte" según definido en la LPAU. La Sección 3.14 de la LPAU, 3 LPRA sec. 9654, dispone en lo pertinente que "[l]a agencia deberá notificar . . . **a las partes**, y a sus abogados, de tenerlos, la orden o resolución a la brevedad posible". (Énfasis suplido).

En esa dirección, la LPAU establece que podrá ser parte en el procedimiento aquella persona que: (1) dirija o contra quien se dirija la acción ante la agencia; (2) a quien la agencia le autorice intervenir o participar, o (3) quien sea designado como parte en dicho procedimiento. Sec.

1.3(k) de la LPAU, 3 LPRA 9603(k). Bajo esta última modalidad, es posible que, aparte de un abogado o abogada, una persona designe a un tercero como su agente o representante en el pleito. La LPAU no establece el procedimiento para tramitar este tipo de designación. De ahí a que la fijación de estos criterios quede sometida al poder de reglamentación de las respectivas agencias, conforme a las limitaciones impuestas por la LPAU.[3]

En el caso de la OGPe, los criterios para procurar la designación de un agente o representante están contenidos en el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos (Reglamento Conjunto), Reg. Núm. 8573 de 24 de marzo de 2015. La Sección 5.3.6(a) del Reglamento Conjunto establece que toda solicitud, autorización o trámite regulado bajo dicho Reglamento Conjunto deberá ser promovido por el dueño, optante o arrendatario de la propiedad con autorización, por sí o **a través de su agente autorizado**. Un agente o representante autorizado es "cualquier persona natural o jurídica al que **el dueño** de las actividades reguladas en el [Reglamento Conjunto] **autoriza o faculta mediante una autorización escrita y firmada** a representarlo ante la OGPe para solicitar aquellos trámites y/o permisos que requieran cumplir con las disposiciones . . . de ley o

---

[3]La Sección 8.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9711, establece que: "En cuanto a los procedimientos administrativos no contemplados en este capítulo, las agencias deberán reglamentar sus prácticas a tono con las disposiciones de este capítulo".

reglamentarias relacionadas". (Énfasis suplido). Capítulo IV(A)(43) del Reglamento Conjunto.

En virtud de lo anterior, la designación de un agente o representante está condicionada a que medie el consentimiento **expreso, escrito y firmado** por parte del representado. Solo así puede tal designación cobrar eficacia legal para considerar al representante como la persona a quien existe la obligación de notificar una orden o resolución final, en lugar del representado. En esa línea, es de notar que el Reglamento Conjunto no establece excepciones a la exigencia anterior, ni contempla la posibilidad de que medie el consentimiento tácito o constructivo del representado. Por lo tanto, de no mediar una autorización válida, es forzoso concluir que subsiste la obligación de la agencia de notificar los dictámenes al representado.

**B.**

Por otro lado, la validez de la notificación de una orden o resolución final depende no tan solo de que se dirija a la parte con derecho a ello, sino que también se efectúe a través de los mecanismos autorizados. Sobre el particular, la Sección 3.14 de la LPAU, supra, exige que las partes sean notificadas "[c]on copia simple por correo ordinario **y** por correo certificado". (Énfasis suplido). Desde luego, sabido es que la norma anterior no es óbice para que una agencia gobernada por la LPAU varíe el método de notificación, siempre que su ley habilitadora lo

autorice, la regla promulgada se ciña a los parámetros estatuidos en dicha ley y la regla no sea arbitraria o caprichosa. Véanse, Col. Médicos v. Acad. Medicina et al., res. el 7 de noviembre de 2018, 2018 TSPR 180, pág. 12; Vitas Health Care v. Hospicio La Fe et al., 190 DPR 56, 66-67 (2014); Franco v. Depto. de Educación, 148 DPR 703, 711 (1999) (Per curiam).

En el caso de autos, la Ley Núm. 161-2009, según enmendada, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, 23 LPRA sec. 9011, et seq., encargó a la OGPe la evaluación y concesión o denegación de las determinaciones finales y permisos relativos al desarrollo y uso de terrenos. 23 LPRA sec. 9012d; Laureano v. Mun. de Bayamón, 197 DPR 420, 433-434 (2017); Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228, 236 (2014). En torno a la aplicabilidad de la LPAU a los procedimientos adjudicativos ante la OGPe, la Ley Núm. 161-2009 dispone que:

> La Ley de Procedimiento Administrativo Uniforme será de aplicación a todos los procedimientos para la evaluación, el otorgamiento o la denegación de determinaciones finales y permisos, recomendaciones, certificaciones, licencias, certificados . . . al amparo de las disposiciones de este capítulo, **salvo en las instancias que expresamente se disponga lo contrario** o en aquellos casos donde este capítulo resulte inconsistente con la Ley de Procedimiento Administrativo Uniforme. (Énfasis suplido). 23 LPRA sec. 9028e.

A tono con lo anterior, la Ley Núm. 161-2009 faculta expresamente a la OGPe para reglamentar el modo de notificar los dictámenes finales que versan sobre

determinaciones **discrecionales** a cargo de la agencia.[4] En esos casos, la ley habilitadora dispone que una vez se conceda o deniegue una solicitud discrecional, el Director Ejecutivo de la OGPe "[p]rocederá a notificar su determinación **de conformidad con el procedimiento dispuesto para ello en el Reglamento Conjunto**". (Énfasis suplido). 23 LPRA sec. 9018g-1. Específicamente, la Sección 5.2.4 del Reglamento Conjunto establece que "[c]omo norma general", las notificaciones "serán mediante correo electrónico, excepto en aquellos casos en que la persona a ser notificada no cuente con una dirección de correo electrónico, en cuyo caso se notificará mediante correo regular o según dispone la [LPAU]".

Vemos, pues, que ante la falta de recursos telemáticos de la parte con derecho a ser notificada, la OGPe viene obligada a procurar un método de notificación tradicional. En tales casos, queda a su discreción notificar el dictamen a través del correo regular exclusivamente o según ordena la LPAU, en cuyo caso le será necesario enviar el dictamen por correo regular y correo certificado.

---

[4]Una determinación discrecional es aquella que conlleva el análisis subjetivo de la agencia y para la cual se exige conocimiento especializado, discreción y juicio, ya que requiere que se consideren otros asuntos aparte de los estándares fijos y las medidas objetivas fijadas por ley. Véanse, 23 LPRA sec. 9011(26); Capítulo IV(D)(48) del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo y Uso de Terrenos, Reg. Núm. 8573 de 24 de marzo de 2015. Según reconocen las partes, la solicitud de consulta presentada por la Sra. Myrna Rivera Laboy para autorizar una construcción **con variaciones** a los parámetros aplicables a su zona residencial, involucra una determinación discrecional de la OGPe.

**C.**

Finalmente, existen ocasiones en que el servicio postal devuelve las notificaciones cursadas a las partes. Esta situación abre una ventana de obstáculos para el ejercicio de los derechos de las partes, incluyendo su derecho a procurar la revisión de un dictamen adverso. Vélez Seguinot v. AAA, 164 DPR 772, 789 (2005). Ante controversias de esta índole, este Tribunal ha rehusado catalogar como suficiente una notificación devuelta por el mero hecho de que fue enviada conforme a los mecanismos autorizados por la ley o el reglamento aplicable. Como se conoce, existen contextos en que el cumplimiento con estos requisitos estatuarios no alcanza las exigencias constitucionales del debido proceso de ley. D. Quiñones Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Ed. Forum, 2013, pág. 394. Es por ello que, lejos de aplicar un análisis autómata, este Tribunal ha puesto especial atención en examinar las circunstancias en que fue devuelta la notificación.

Entre estas circunstancias, hemos considerado la razón por la que se devolvió la notificación. Por ejemplo, en Rivera v. Jaume, 157 DPR 562 (2002), atendimos una controversia relacionada a una notificación devuelta con la anotación de "no reclamada" (unclaimed). Allí, como parte de nuestro análisis, reconocimos una distinción importante entre las notificaciones devueltas por ser rechazadas (refused) por el destinatario y aquellas devueltas por no

ser reclamadas. Íd., págs. 581-582. El primer supuesto implica, lógicamente, la acción deliberada y expresa del destinatario de no aceptar la correspondencia cursada, a pesar de que fue puesta a su alcance. Empero, la correspondencia devuelta por no ser reclamada exige otro proceder. Y es que esta situación puede ocurrir por diversas razones, algunas ajenas a la voluntad del destinatario. A modo de ejemplo, porque el foro adjudicativo anotó su dirección incorrectamente. Íd.

A la luz de esta realidad, hemos exigido a los foros correspondientes a no conformarse con meramente constatar la devolución de una notificación, sino a salvaguardar el debido proceso de ley e inquirir, cuando menos, si la dirección provista pertenece o perteneció a la parte con derecho a ser notificada. Íd., págs. 582-583. De ahí a que la corrección de la dirección de envío constituya otro factor a auscultar, pues no basta con notificar "[a] cualquier dirección, sino, obviamente, a la dirección correcta". Ortiz v. A.R.Pe., 146 DPR 720, 724 (1998). Desde Rodríguez v. Nasrallah, 118 DPR 93 (1986), hicimos explícito este requisito y adoptamos el criterio federal de la dirección razonablemente calculada para examinar si, a la luz de la información conocida por el remitente, la dirección de envío fue adecuada cuando ésta se desconoce o se pone en duda. Íd., págs. 101-102.

Además, este Tribunal ya ha intimado la necesidad de examinar las gestiones, si algunas, hechas por el remitente

para intentar re-notificar el documento devuelto. Por ejemplo, en R & G v. Sustache, 163 DPR 491 (2004), resolvimos por sentencia que para un remitente no constituye ningún esfuerzo extraordinario –sino un mínimo de diligencia- reenviar el documento devuelto a otra dirección postal que obraba en sus expedientes. Íd., págs. 505-506. Igual razonamiento suscribió este Tribunal en Vendrell López v. AEE, 199 DPR 352 (2017) (Sentencia), en cuanto concluyó que la validez de la notificación de una determinación administrativa devuelta por no ser reclamada depende, entre otros factores, de que "se logr[e] demostrar que la parte remitente realizó **esfuerzos razonables** para notificar el documento en cuestión". (Énfasis suplido).

Hoy resulta adecuado y necesario pautar mediante Opinión el deber de realizar esfuerzos razonables para que una notificación cumpla con los parámetros aquí expuestos. En ese sentido, es menester reconocer el alcance de la doctrina de los esfuerzos adicionales razonables elaborada por el Tribunal Supremo de Estados Unidos en Jones v. Flowers, 547 US 220 (2006). Allí se resolvió que cuando el Estado tiene información que indique que su intento de notificar fue inefectivo, éste tiene la obligación de proceder tal y como lo haría "una persona realmente deseosa de informar" a la parte afectada por la determinación gubernamental adversa. Íd., pág. 229, citando a Mullane v. Central Hanover Bank & Trust Co., 339 US 306, 315 (1950). De esa forma, el máximo foro federal concluyó que

correspondía al remitente de la notificación devuelta tomar pasos adicionales para informar al destinatario, toda vez que la información recibida en ese caso confirmaba a la agencia que el destinatario no recibió la notificación y, por lo tanto, desconocía del procedimiento en curso y su derecho a comparecer para defender sus intereses.

**III**

En el presente caso, la OGPe notificó una Resolución el 13 de julio de 2016 mediante la cual autorizó la consulta de construcción presentada por la señora Rivera Laboy y en cuyo procedimiento el peticionario intervino. Aunque la agencia envió la notificación por correo a la dirección postal provista por el peticionario, ésta fue devuelta por el correo tras no encontrar un buzón (mail receptacle) donde depositarla.

Así las cosas, no fue hasta noviembre de ese año que el peticionario conoció el resultado de la consulta de construcción. Esto, luego de percatarse que la señora Rivera Laboy gozaba de un permiso de construcción que le fue expedido en virtud de lo resuelto en el procedimiento del cual no fue notificado. En desacuerdo, el peticionario solicitó la reconsideración de lo dictaminado en el pleito de consulta. Allí cuestionó los méritos de la decisión y, en lo pertinente, enfatizó que nunca recibió el dictamen. No obstante, la División de Reconsideración se declaró sin jurisdicción por entender que la solicitud del peticionario

fue tardía. Concluyó que la <u>Resolución</u> que aprobó la consulta de construcción fue notificada correctamente al peticionario el 13 de julio de 2016.

De ese modo, la controversia que nos ocupa se circunscribe a resolver si, a la luz de las exigencias del debido proceso de ley, ese dictamen fue notificado adecuadamente. Ello, con el propósito ulterior de conocer si la reconsideración presentada por el peticionario fue tardía o, por el contrario, prematura.

De conformidad a lo anteriormente indicado, la OGPe nos invita a despachar los reclamos del peticionario bajo la teoría de que no estamos propiamente ante un escenario de notificación defectuosa porque, independientemente de que la notificación cursada al peticionario fue devuelta, lo cierto es que el agrimensor Torres recibió la misma. Según la agencia, el agrimensor Torres fungió como el agente o representante del peticionario en el pleito de consulta de construcción, de modo que bastaba con notificarle a éste para dar por cumplidas las exigencias de notificación. No es correcto.

El agrimensor Torres participó como representante autorizado del peticionario en **otro caso** ante la OGPe, mas **no en el caso sobre consulta de construcción** (Caso Núm. 2016-112006-CCO-191301). Los autos demuestran que el peticionario autorizó al agrimensor Torres a tramitar los asuntos relacionados al Caso Núm. 2015-SRQ-115884, mediante el cual se presentó una querella contra la señora Rivera

Laboy. A esos efectos y conforme exige el propio Reglamento Conjunto, supra, el peticionario suscribió un documento de autorización mediante el cual **expresamente** designó al agrimensor Torres como su representante en esa gestión.[5]

En cambio, en cuanto al pleito de consulta de construcción, es de notar que el peticionario presentó la solicitud de intervención por **derecho propio y sin designar a un representante.** Es por lo anterior que la OGPe notificó la subsiguiente autorización de intervención **exclusivamente** al peticionario.[6] Tampoco existe prueba en el expediente que demuestre que el peticionario presentó tal autorización con posterioridad a su comparecencia inicial en el pleito sobre consulta de construcción. Por tanto, rechazamos la contención de la OGPe a los efectos de que el peticionario fue notificado conforme a derecho a través del ingeniero Torres.

Desde luego, la anterior conclusión no dispone de este caso. Por el contrario, establecida la obligación de la OGPe de notificar el dictamen directa y adecuadamente al peticionario, debemos entonces determinar si la agencia cumplió con ese deber. Este análisis debe comenzar por reconocer que la corrección de la dirección a la cual la OGPe envió la notificación no se disputa entre las partes. Esa dirección -Urb. Las Colinas E-1, Calle Colina Real, Toa

---

[5]Véase, Autorización en el apéndice del certiorari, pág. 101.

[6]Véase, Resolución sobre Solicitud de Intervención de 6 de julio de 2016, Apéndice del certiorari, pág. 58.

Baja, PR 00949- fue provista a la agencia por el propio peticionario y así consta en la Resolución y su sobre de envío. De hecho, el peticionario reconoce que recibió otras notificaciones en esa dirección. Tampoco hay duda de que la Resolución se envió por correo regular y que, a pesar de los planteamientos en contrario formulados por el peticionario, ese método de notificación está expresamente autorizado por la ley orgánica de la agencia y su Reglamento Conjunto, supra.

Amparándose en estos hechos incontrovertidos, la OGPe insiste en que la notificación del dictamen al peticionario se ajustó a las exigencias del debido proceso de ley y, por consiguiente, fue conforme a derecho. Sin embargo, notamos que estos hechos -unidos a otros que la agencia parece ignorar- son los que precisamente refutan su argumento. Distinto al razonamiento propuesto por la agencia, nuestro análisis no pasa por desapercibido la razón por la cual el servicio postal devolvió la correspondencia. Tampoco ignoramos el hecho de que la agencia conoció lo anterior prontamente y, **teniendo alternativas a su alcance**, nada hizo al respecto.

En este caso, el servicio postal devolvió a la OGPe la notificación cursada al peticionario con la siguiente anotación en el sobre: "RETURN TO SENDER. **NO MAIL RECEPTACLE.** UNABLE TO FORWARD." Como bien reconoce la OGPe, lo anterior significa que el servicio postal no encontró un buzón donde dejar la correspondencia. La

diferencia entre esta situación y aquellas en que la correspondencia es devuelta por no ser reclamada (<u>unclaimed</u>) o haber sido rechazada expresamente (<u>refused</u>) por el destinatario es abismal. Cuando el propio servicio postal le indica al remitente que no pudo dejar la correspondencia al alcance del destinatario -como sucedió aquí- toma poco esfuerzo lógico comprender que éste último nunca tuvo acceso a la misma. La OGPe conoció sobre esta situación a tan solo cuatro días de haber enviado por correo el dictamen al peticionario. Nada hizo al respecto.

Confrontada con esa realidad, la OGPe insiste en que, si la dirección de envío fue correcta y la correspondencia fue devuelta por la falta de un buzón, entonces re-notificar el dictamen hubiera resultado inútil. Mediante ese razonamiento, nos urge a concluir que nada más se podía hacer. Sin embargo, no podemos pasar por alto el hecho de que la OGPe siempre supo que el peticionario había recibido otras notificaciones en la misma dirección en cuestión, sin que fueran devueltas. Lo anterior debió alertar a la agencia sobre la posibilidad de que el dictamen hubiera sido devuelto por error. Ante ese escenario, la OGPe pudo ejercer uno de varios esfuerzos razonables adicionales. Veamos.

A modo de ejemplo, la agencia podía intentar re-notificar el dictamen a la misma dirección mediante el mismo u otro método de envío postal autorizado en su reglamento. Con ello podía descartar que la correspondencia

hubiera sido devuelta erróneamente. Además, podía informar por el teléfono al peticionario sobre la correspondencia devuelta y las razones aducidas por el servicio postal.[7] Nótese que no se trata de sustituir los mecanismos de notificación exigibles por una llamada telefónica, sino de utilizar ésta para comunicarle al peticionario el problema, de suerte que se pudiera corroborar la situación y tomar las providencias necesarias para re-notificar por las vías autorizadas. Peor aún, la OGPe ignoró que **su propio reglamento** le permitía notificar el dictamen al peticionario por la vía electrónica. La falta de un correo electrónico en el expediente no es obstáculo, pues la agencia también pudo procurar esa información a través de una sencilla llamada telefónica. Nada de esto hizo la OGPe.

En fin, cuando una agencia administrativa notifica una determinación final adversa a una parte a la dirección correcta y conforme a los mecanismos autorizados, pero la misma es devuelta, ello no torna automáticamente en suficiente tal notificación. Hoy resolvemos explícitamente que cuando una agencia tiene información que le permita conocer que sus intentos de notificar a la parte interesada han resultado inútiles, ésta debe realizar esfuerzos adicionales razonables, tal y como se esperaría de una agencia realmente deseosa de informar a las partes afectadas por un dictamen adverso. Estas diligencias no

---

[7]En este caso, el peticionario suplió a la agencia su número de teléfono móvil. Véase la solicitud de intervención en el apéndice del <u>certiorari</u>, pág. 54.

exigen lo absurdo e imposible de las agencias; tan solo requieren que se haga lo razonable a la luz de la totalidad de las circunstancias en cada caso.

Como se puede apreciar, la inercia de la OGPe tras conocer sobre la notificación devuelta fue de tal magnitud que ni siquiera tenemos la ocasión de examinar la razonabilidad de sus esfuerzos adicionales, pues, desafortunadamente, ninguno hizo. Ante ese cuadro, concluimos que la notificación cursada al peticionario fue insuficiente a la luz de los hechos acaecidos en este caso.

**IV**

Por los fundamentos expuestos, se revoca la determinación del Tribunal de Apelaciones y se ordena a la Oficina de Gerencia de Permisos a re-notificar al Sr. Rubén Román Ortiz la Resolución cursada originalmente el 13 de julio de 2016 en el caso sobre consulta de construcción núm. 2016-112006-CCO-191301.

Luis F. Estrella Martínez
Juez Asociado

SPREN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rubén Román Ortiz<br><br>Peticionario<br><br>v.<br><br>Oficina de Gerencia de Permisos; División de Reconsideración de Determinaciones Finales de la OGPe<br><br>Recurrido<br><br>v.<br><br>Myrna Rivera Laboy p/c Ing. Ángel D. Rodríguez<br><br>Recurridos | CC-2017-0698 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 7 de febrero de 2020.

Por los fundamentos expuestos, se revoca la determinación del Tribunal de Apelaciones y se ordena a la Oficina de Gerencia de Permisos a re-notificar al Sr. Rubén Román Ortiz la Resolución cursada originalmente el 13 de julio de 2016 en el caso sobre consulta de construcción núm. 2016-112006-CCO-191301.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión. La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión:

"La Jueza Asociada señora Pabón Charneco concurre con el resultado. La Ponencia avalada por una mayoría de este Tribunal resulta preocupante ya que la misma provocaría una carga muy onerosa para las agencias administrativas."

El Juez Asociado señor Colón Pérez no intervino. El Juez Asociado señor Martínez Torres está inhibido.

Jose Ignacio Campos Pérez
Secretario del Tribunal Supremo